IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CYNTHIA YARLETT, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Civil Action No. 10-1666 |
| v. | ) ) | Chief Judge Gary L. Lancaster |
| MICHAEL J. ASTRUE, | ) ) | Electronic Filing |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

January 3, 2011

### I. INTRODUCTION

Cynthia Yarlett ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act"). This matter comes before the court on cross motions for summary judgment. (ECF Nos. 7, 9). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI with the Social Security Administration on July 18, 2007, claiming an inability to work due to disability as of March 5, 2007. (R. at 91 – 102)[1]. Plaintiff was initially denied benefits on September 20, 2007. (R. at 62 – 70). A hearing was scheduled for April 7, 2009, and Plaintiff appeared to testify represented by counsel. (R. at 16 – 36). A vocational expert also testified. (R. at 16 – 36). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on May 15, 2009. (R. at 6 – 15). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on October 22, 2010, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 3).

Plaintiff filed her Complaint in this court on December 21, 2010. (ECF No. 3). Defendant filed his Answer on March 18, 2011. (ECF No. 4). Cross motions for summary judgment followed. (ECF Nos. 7, 9).

## III. STATEMENT OF THE CASE

*A. General Background*

Plaintiff was born on April 1, 1959, wand as fifty years of age at the time of her administrative hearing. (R. at 91 – 102). Plaintiff advanced only through the tenth grade, but subsequently earned her GED. (R. at 20). She completed no post-secondary education or vocational training. (R. at 20). Plaintiff was last employed on March 5, 2007, and at that time worked as a cashier at Wal-Mart. (R. at 20, 120). Other past relevant work included cashier, cleaning, and stocking positions. (R. at 120). She left Wal-Mart due to left arm and shoulder

---

[1] Citations to ECF. Nos. 5 – 5-7, the Record, *hereinafter*, "R. at __."

pain that did not resolve despite surgical intervention. (R. at 20 – 21, 131). Following the termination of short-term and long-term disability benefits which she received as a result of her injury, Plaintiff subsisted on welfare. (R. at 27).

Plaintiff most recently lived independently in her own apartment. (R. at 133). She personally reported that her daily activities varied due to her pain, and that her pain was constant, severe, and difficult to describe. (R. at 133 – 42). Plaintiff complained primarily of difficulty with her left arm and shoulder, but also with her back, neck, and hands. (R. at 133 – 42). Dressing, driving, shopping, cleaning, and cooking was troublesome due to Plaintiff's inability to use her left arm. (R. at 133 – 42). She spent most of her day reading and watching television. (R. at 133 – 42). She could walk five or six blocks, but was limited in her lifting and bending. (R. at 133 – 42). Plaintiff believed that her work as a cashier was the main contributor to her physical decline. (R. at 133 – 42).

*B. Treatment History*

Plaintiff was under the care of surgeon David C. Neuschwander, M.D. for complaints related to her left shoulder. On April 23, 2007, Plaintiff underwent arthroscopic subacromial decompression with distal clavicle resection to treat previously diagnosed left shoulder chronic rotator cuff tendinitis with acromioclavicular joint degenerative arthritis after more conservative treatment, including injections and physical therapy, had failed. (R. at 157 – 58). The surgery was completed without complications. (R. at 157 – 58). Subsequently, Plaintiff engaged in a course of rehabilitative physical therapy. (R. at 159). However, after approximately twenty-five sessions, Plaintiff still complained of severe left shoulder pain which limited her ability to complete her exercise routine. (R. at 159). The physical therapist noted that Plaintiff's range of motion had decreased secondary to her complaints of pain. (R. at 159).

At follow-ups with Dr. Neuschwander, Plaintiff complained that while she did not feel that her left shoulder pain was worsening, it had not improved in spite of her surgery. (R. at 166, 168 – 69). While she had initially been doing "quite well," her shoulder condition seemed to worsen after she attempted to take a "tarp down off of her porch." (R. at 166, 168 – 69). Upon examination, Plaintiff was non-tender over the AC joint in her shoulder. (R. at 166, 168 – 69). Jobe's tests were positive for pain, but not weakness, in the left shoulder. (R. at 166, 168 – 69). The doctor advised Plaintiff to continue with rehabilitation. (R. at 166, 168 – 69). Plaintiff was given notes to remain off from work in the meantime. (R. at 166, 168 – 69). By August 2007, however, Dr. Neuschwander admitted that Plaintiff had not benefitted significantly from surgical intervention. (R. at 172).

On September 5, 2007, state agency physician Juan B. Mari-Mayans, M.D. completed a physical residual functional capacity ("RFC") assessment of Plaintiff. (R. at 190 – 96). Based upon Plaintiff's medical history, he diagnosed Plaintiff with left shoulder chronic rotator cuff tendonitis with acromioclavicular joint degenerative arthritis. (R. at 190 – 96). He limited Plaintiff to lifting no more than twenty pounds occasionally and ten pounds frequently, standing and walking about six hours of an eight hour workday, and sitting about six hours. (R. at 190 – 96). Plaintiff was not otherwise found to be functionally limited. (R. at 190 – 96).

On February 7, 2008, Plaintiff was evaluated by pain specialist Aleksandr Mickhaylovskly, M.D. (R. at 201 – 03). He noted Plaintiff's complaints of left arm, shoulder, and neck pain, and included Plaintiff's claim that her pain often woke her at night. (R. at 201 – 03). Plaintiff was diagnosed with cervical radiculopathy, limb pain, chronic pain syndrome, dysthymia, and contracture of the joint of the shoulder region. (R. at 201 – 03). Plaintiff was to have an MRI of the neck, an EMG, and further physical therapy. (R. at 201 – 03).

Rajesh Mehta, M.D. performed a nerve conduction study of Plaintiff on February 18, 2008. (R. at 199 – 200). Plaintiff refused the needle EMG examination, and as a result, the findings were limited. (R. at 199 – 200). However, Dr. Mehta did determine that there was no evidence of peripheral neuropathy. (R. at 199 – 200). The existence of cervical radiculopathy and brachial plexopathy could not be definitely excluded. (R. at 199 – 200).

Dr. Mickhaylovskly evaluated Plaintiff again in March 2008, and noted mild improvement in her symptoms with home exercise. (R. at 204 – 05). Plaintiff was diagnosed with frozen shoulder, depression, and cervicalgia. (R. at 204 – 05). Plaintiff was to continue a home exercise routine. (R. at 204 – 05). Plaintiff's left shoulder was considered to be non-functional for work purposes, however. (R. at 204 – 05). Plaintiff did not return to the pain specialist due to an inability to pay for services. (R. at 214).

In 2008, Dr. Neuschwander examined Plaintiff over the course of several months regarding her left shoulder, and noted that Plaintiff's complaints of unresolved pain and limitation had remained the same. (R. at 214 – 15). Dr. Neuschwander felt that Plaintiff's complaints were out of proportion with what is typically observed following a surgical procedure of the type undergone by Plaintiff. (R. at 214 – 17). Upon physical inspection, Dr. Neuschwander could not locate a specific point of tenderness on the left shoulder; Plaintiff complained only of diffuse pain. (R. at 214 – 15). Jobe testing revealed only some discomfort, and there was no tenderness over the AC and SC joints in Plaintiff's shoulder. (R. at 214 – 15). He did not believe that he could offer Plaintiff any further help with her pain. (R. at 214 – 15).

Dr. Neuschwander completed an Attending Physician's Statement of Continued Disability on July 16, 2008. (R. at 206 – 07). Dr. Neuschwander noted Plaintiff's subjective complaints of pain and inability to raise her left arm. (R. at 206 – 07). Plaintiff had no

5

limitations in standing, walking, or sitting, but could not lift, carry, reach, work overhead, push, or pull with her left arm. (R. at 206 – 07). No other limitations findings were made. (R. at 206 – 07).

Other notes by Dr. Neuschwander indicated his belief that Plaintiff was completely disabled from working beginning October 22, 2007, and ending January 14, 2008. (R. at 197 – 98). Dr. Neuschwander also completed two Pennsylvania Department of Public Welfare Employability Re/Assessment forms indicating that Plaintiff was temporarily disabled for a twelve month period beginning January 14, 2008 and ending January 14, 2009, due to her shoulder condition. (R. at 208 – 11).

*C. Administrative Hearing*

In terms of her activities of daily living, Plaintiff testified that she only cooked microwaveable food, and her cleaning was limited to minor dusting. (R. at 22). She still maintained her driver's license, but took the bus to her hearing. (R. at 32). Plaintiff continued to engage in a therapeutic exercise routine at home in an attempt to alleviate her left shoulder pain and maintain her strength and range of motion. (R. at 21 – 22). Despite her workouts, Plaintiff had difficulty raising her left arm. (R. at 24 – 25). As a result, getting dressed could be problematic. (R. at 28). Plaintiff also explained that due to pain and fatigue she took naps three to four times each day for approximately one-half to one-and-one-half hour at a time. (R. at 31). Otherwise, Plaintiff spent most of her time watching the television. (R. at 31).

Plaintiff claimed that her pain was worsening, not only in her left shoulder, but in other parts of the body. (R. at 22 – 25). She claimed that her back, neck, and hands were in pain. (R. at 22 – 27, 30). However, Plaintiff's counsel confirmed that there was nothing in the medical record to corroborate Plaintiff's claims of limitation with her right hand. (R. at 19). Plaintiff

claimed that her new primary care physician believed Plaintiff suffered from fibromyalgia. (R. at 23). Yet, Plaintiff did not take any medication to treat her pains, including over-the-counter medications, even though she alleged being in pain constantly – rating her pain as seven or eight on a scale of ten. (R. at 25, 29 – 30). The only relief Plaintiff claimed to receive was when she soaked in a hot bathtub. (R. at 30). Plaintiff also claimed that she had difficulty sleeping, and explained that she did take prescription medication for that condition. (R. at 26). While Plaintiff admitted that her old primary care physician and Dr. Neuschwander informed her that she was capable of performing work with her right arm, Plaintiff did not personally believe that any jobs existed which could accommodate her inability to use her left arm. (R. at 32).

The ALJ concluded the hearing by asking the vocational expert whether a significant number of jobs existed in the national economy for a hypothetical person of Plaintiff's age, educational background, and work experience if limited to light exertional work not requiring useful function of the non-dominant left arm, or lifting and carrying more than twenty pounds with the right arm. (R. at 34). The vocational expert replied by stating that such a person could work as an usher, hostess, or sorter – significant numbers of each vocation existing in the national economy. (R. at 34). If the hypothetical person had an added limitation requiring him or her to lie down three or four times per day to rest, no jobs would be available, however. (R. at 35).

## IV. STANDARD OF REVIEW

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death

7

or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4); *see Barnhart v. Thomas,* 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[2] and 1383(c)(3)[3]. Section 405(g) permits a district court to review

---

[2] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[3] Section 1383(c)(3) provides in pertinent part:

8

the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery,* 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d. Cir. 1986).

---

The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

9

## V. DISCUSSION

The ALJ concluded that Plaintiff had medically determinable severe impairment in the way of residual effects of a rotator cuff tear. (R. at 11). It was determined that Plaintiff was not disabled because she had the functional capacity to perform light exertional work, although precluded from use of her non-dominant left arm, and limited to lifting no more than twenty pounds with the right arm, and – as per the testimony of the vocational expert – a significant number of jobs existed in the national economy which could be performed by a person with Plaintiff's limitations. (R. at 12, 14).

Plaintiff objects to the determination of the ALJ, arguing that the ALJ erred in failing to give adequate weight to the subjective complaints of pain and limitation alleged, and in failing to adequately discuss medical evidence weighing in Plaintiff's favor. (ECF No. 8 at 5 – 7). With respect to Plaintiff's argument, it has been held that when rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706). In the present case, the ALJ adequately met his responsibilities under the law.

A brief review of the concise medical record illustrates the lack of support for Plaintiff's contentions. While the ALJ acknowledged that Plaintiff's left shoulder did not improve

appreciably following her surgery, he was correct in concluding that – aside from the non-functionality of her left arm – Plaintiff was otherwise not significantly limited. (R. at 12 – 13). There was no objective evidence on the record to support Plaintiff's claim that she required frequent naps during the day, that her right hand limited her functionality, or that she suffered significantly limiting discomfort anywhere other than in her left shoulder. (R. at 12 – 13). In his own assessment of Plaintiff's functional capacity, Dr. Neuschwander's limitations findings were all pertaining to Plaintiff's inability to use her left shoulder. (R. at 12 – 13). No other doctors listed any other objectively identifiable limitations in her functioning. (R. at 12 – 13). Plaintiff, herself, admitted at her hearing that her doctors had informed her that she could work with her right arm. (R. at 19, 32). Plaintiff does not point to any objective medical evidence which supports the degree of limitation and pain which she alleges. Dr. Neuschwander stated in his notes that her complaints of pain were out of proportion to what is normally expected in a case such as hers. (R. at 12 – 13). The court therefore finds that the ALJ did not misstate the record, and adequately supported his decision to deny benefits with substantial evidence from the objective medical findings before him. Furthermore, the ALJ fully accommodated Plaintiff's legitimate limitations as they related to her left arm by eliminating the need for use of the left arm in his hypothetical to the vocational expert, and RFC assessment.

### VI. CONCLUSION

Based upon the foregoing, substantial evidence supported the determination by the ALJ. Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (ECF

No. 7) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 9) is GRANTED and the decision of the ALJ is AFFIRMED.

                                                          /s/ Gary L. Lancaster        ,C.J.
                                                          Hon. Gary L. Lancaster
                                                          Chief United States District Judge

cc/ecf: Kelie C. Schneider, Esq.
       Robert Pierce & Associates, P.C.
       707 Grant Street, 2500 Gulf Tower
       Pittsburgh, PA 15219

       Paul Kovac, Esq.
       United States Attorney's Office
       700 Grant Street
       Suite 4000
       Pittsburgh, PA 15219